UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIP C. BARRON, D.C.; GILBERT S. WEINER, D.C.; and BRIAN T. FARRELL, D.C., <br><br> Plaintiffs, <br><br> v. <br><br> NCMIC INSURANCE CO., <br><br> Defendant. | Civil Action No. 17-cv-11969-ADB |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiffs (the "Barron Chiropractors") are chiropractors who are insured under a professional liability insurance policy provided by Defendant NCMIC Insurance Co. ("NCMIC"). They filed this lawsuit asserting that NCMIC has a duty to defend and indemnify them in an action that is currently pending before this Court: Government Employees Insurance Company v. Barron Chiropractic & Rehabilitation, P.C., et al., No. 16-cv-10642-ADB (D. Mass. Apr. 1, 2016) (the "Underlying Action"). NCMIC moves to dismiss the complaint for failure to state a claim. [ECF No. 5]. For the reasons that follow, the motion to dismiss is GRANTED and the complaint is DISMISSED without prejudice. The Barron Chiropractors may file an amended complaint within 30 days of the date of this Order.

### I. BACKGROUND

In evaluating NCMIC's motion to dismiss, the Court accepts the well-pleaded allegations as true. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014). The Barron Chiropractors have attached several documents to the Complaint, which the Court may consider

as part of the pleadings. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

Each Barron Chiropractor is insured under a Professional Liability Insurance Policy issued by NCMIC (the "Policy") and has paid all of the required premiums. Compl. ¶¶ 9−12; [ECF Nos. 1-1, 1-2, 1-3].[1] In relevant part, the Policy's "Coverage Agreement" states:

> **We** will pay on behalf of an **insured** all sums to which this insurance applies and for which an **insured** becomes legally obligated to pay as **damages** because of an **injury**. The **injury** must be caused by an accident arising from an **incident** during the **policy period**. The **injury** must also be caused by an **insured** under this policy.

[ECF No. 1-1 at 22]. The Policy's "Defense and Settlement Clause" further provides:

> **We** have the right and duty to defend any **claim** or suit brought seeking **damages** against the **insured** for an **injury** covered by this policy. **We** have the right to appoint counsel and **we** may investigate any **claim** made or suit brought. With **your** written consent, **we** may settle any **claim** or suit as **we** believe may be proper. **We** shall not be obligated to pay any **claim** or judgment or to defend or continue to defend any suit after the limit of **our** liability is exhausted because of payment of judgments or settlements. Your **consent** shall not be required to make a settlement or payment after a judgment has been entered against you.

[ECF No. 1-1 at 22].[2] "We" refers to NCMIC and "You" refers to the insured. Id. at 21. "Claim" means "a written demand for money or services arising from an alleged **injury** to which this insurance applies." Id. "Injury" is defined as "bodily injury, sickness, disease or death sustained by any one person." Id. "Incident" refers to "any negligent omission, act or error in the providing of **professional services** by an insured or any person for whose omissions, acts or errors an **insured** is legally responsible." Id. "Professional services" covers "services which are within the scope of practice of a chiropractor in the state or states in which the chiropractor is licensed." Id.

---

[1] The parties agree that the relevant provisions of the Policy are identical in each of the Barron Chiropractors' contracts. [ECF No. 6 at 15]; [ECF No. 13 at 6].
[2] The Policy also includes, inter alia, Declarations, a Supplemental Legal Defense Endorsement, Persons Insured Amendatory Endorsement, Massachusetts Nonrenewal and Cancellation Endorsement, and Massachusetts Exclusion F. Endorsement. See, e.g., [ECF No. 1-1 at 3−18].

2

"Damages" means "the monetary portion of any judgment, award or settlement," except for punitive or exemplary damages, multiplied compensatory damages, uninsurable judgments or awards, and fines, penalties, or sanctions. Id.

On April 20, 2016, the Barron Chiropractors notified NCMIC of the Underlying Action which had been filed on April 1, 2016, and requested defense and indemnity from NCMIC under the Policy. Compl. ¶¶ 2, 15. NCMIC denied coverage on May 10, 2016. Id. ¶¶ 15−16. On October 12, 2017, the Barron Chiropractors filed their complaint asserting that NCMIC breached the Policy by failing to defend and indemnify them with respect to the Underlying Action, and seeking a declaration of the parties' defense and indemnification rights and duties under the Policy. [ECF No. 1]. NCMIC moved to dismiss the Complaint shortly thereafter on November 6, 2017. [ECF Nos. 1, 5].

## II.  MOTION TO DISMISS STANDARD

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief that is plausible on its face.'" Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80. First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III. DISCUSSION

### A. Relevant Principles of Contract Interpretation

The parties agree that the interpretation of the Policy should be governed by Massachusetts law. In Massachusetts, "[t]he interpretation of an insurance policy is a question of law," City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford, 846 N.E.2d 775, 777 (Mass. 2006), and such interpretation is no different from construing any other contract. Citation Ins. Co. v. Gomez, 688 N.E.2d 951, 952 (Mass. 1998). The Court reads "all words in their usual and ordinary sense, and construe[s] policies as a whole, without according special emphasis to any particular part over another." Surabian Realty Co., Inc. v. NGM Ins. Co., 971 N.E.2d 268, 271 (Mass. 2012). "When the policy language is ambiguous, doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." Id. (quoting Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012)). Language is ambiguous only "where the phraseology can support a reasonable difference of opinion as to the

4

meaning of the words employed and the obligations undertaken," id. (citation omitted), as the mere fact that "a controversy exists between the parties, each favoring an interpretation contrary to the other," does not create ambiguity. Id. (quoting Boazova, 968 N.E.2d at 390).

The insured "bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy." Boazova, 968 N.E.2d at 390. "Once the insured does this, the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case." Id. "Finally, where the insured seeks to establish coverage through an exception contained within an exclusion to coverage, the burden shifts back to the insured to prove coverage for the claimed loss." Id.

Here, the contractual provisions at issue primarily concern NCMIC's duty to defend the Barron Chiropractors against certain claims or lawsuits. As the Massachusetts Supreme Judicial Court has explained:

> An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms. The duty to defend is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint. In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant.

Metropolitan Prop. and Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667−68 (Mass. 2011) (quoting Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010) (internal quotation marks and citations omitted)). "The process is not one of looking at the legal theory enunciated by the pleader but of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of

protective insurance reasonably generated by the terms of the policy." Billings, 936 N.E.2d at 415 (quoting Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1159 (Mass. 1989)).

### B.     Underlying Action and Policy

On April 1, 2016, Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively, "GEICO") filed a medical provider fraud action against Barron Chiropractic & Rehabilitation and the Barron Chiropractors (collectively, "Barron") asserting the following causes of action: (1) common law fraud; (2) civil conspiracy; (3) money had and received; (4) violations of Massachusetts General Laws Chapter 93A; (5) breach of contract; and (6) intentional interference with business relationships. Government Employees Insurance Company v. Barron Chiropractic & Rehabilitation, P.C., et al., No. 16-cv-10642-ADB (D. Mass. Apr. 1, 2016), ECF No. 1. On August 16, 2017, the Court issued a Memorandum and Order, id. at ECF No. 38 ("MTD Order"), on Barron's motion to dismiss for failure to state a claim, and summarized the salient allegations of GEICO's complaint as follows:

> Under the Massachusetts No-Fault Personal Injury Protection ("PIP") statute, auto insurers in Massachusetts must provide PIP coverage to their insureds. This coverage ensures that persons involved in automobile accidents have their medical expenses covered, regardless of who is liable for the accident. As an insurance company providing this mandatory coverage to its insureds, GEICO pays these PIP benefits directly to healthcare providers, such as Barron.
>
> GEICO alleges that Barron took advantage of the PIP statutory framework by engaging in several different types of fraudulent behavior in an effort to obtain higher payments from GEICO. First, GEICO alleges that the Barron chiropractors consistently determined that every motor vehicle accident patient required chiropractic treatment, prescribed uniform treatments without regard to individual patients' needs, and used boilerplate protocols in order to maximize the amount of treatment rendered and the PIP benefits received from GEICO. These treatment protocols included certain types of in-office treatment (electrical stimulation and hot pack application) that GEICO asserts could and should have been prescribed as home treatment, which would not have been billable. The Barron chiropractors also

6

purportedly only prescribed certain expensive treatments to patients with PIP benefits (like GEICO-insured patients), but not to patients who paid in cash or through regular healthcare insurance, even when those patients had substantially similar injuries. GEICO submits that the sole determinant used by Barron for deciding the appropriate protocol for an individual patient was whether the invoice for their services would be submitted to an insurer or a federal entity like Medicare.

Second, GEICO alleges that Barron fabricated complaints from patients to substantiate the treatment and billing, as evidenced by the fact that, for example, the records for non-English- speaking patients listed specific, subjective complaints despite the fact that Barron does not have translators at its offices. Moreover, Barron submitted template billing forms, without corresponding or supporting medical records, which GEICO argues is in violation of chiropractic regulations.

Third, GEICO alleges that Barron submitted invoices certifying that billed services were rendered by a treating chiropractor, despite the fact that many of the services were actually rendered by unlicensed persons with no formal training, sometimes in a separate physical therapy office also owned by Barron, and that Barron engaged in this misleading billing practice for the purpose of seeing more patients, billing for more services, and receiving increased payments.

Fourth, GEICO claims that Barron charged GEICO-insured patients and billed GEICO for spinal decompression treatments that it publicly advertised as free for all new patients.

Fifth, GEICO alleges that Barron made a myriad of false and misleading statements concerning the services they provided to GEICO-insured patients in both the medical records themselves and the billing invoices, including, inter alia, misidentifying which individual rendered each treatment, misusing Current Procedure Terminology or "CPT" codes created by the American Medical Association ("AMA") to miscategorize the medical services rendered and invoiced for reimbursement, and submitting invoices and records using a Health Insurance Claim Form that falsely certified that the statements on the forms were accurate and not misleading.

Sixth, GEICO submits that Barron engaged in deceptive "up-coding" techniques that allowed them to bill at a higher rate than that of the service actually performed, including, for example, by claiming that certain GEICO-insured patients were "new patients," even if they had previously been seen by Barron, in order to charge GEICO for the more expensive "new patient" visit.

GEICO also asserts that this is not the first time Barron has been disciplined for failing to accurately document services or billing for services that were never actually rendered, claiming that, in July 2009, the Massachusetts Board of Registered Chiropractors executed a Consent Agreement with Barron, disciplining them for the precise types of conduct documented in the complaint.

7

> Additionally, the complaint further alleges that Barron defrauded GEICO by engaging in an unlawful and improper referral scheme by exclusively referring GEICO-insured patients being treated at Dr. Barron's physical therapy clinic, Be Pain Free, to the chiropractic office also owned by Dr. Barron, including patients who did not necessarily need chiropractic care, for the purpose of deriving additional billing.
>
> Finally, GEICO claims that Barron, in violation of Massage Therapy regulations, provided massage therapy services without proper licensure by advertising and providing massage therapy services, despite the fact that it did not have the license required by statute and did not fall into any licensure exception.
>
> In support of its general allegations, GEICO specifically identifies twelve "exemplar" claims, which it claims are illustrative of Barron's widespread deceitful and fraudulent conduct. GEICO also references transcripts of sworn statements by Barron's GEICO-insured patients, which corroborate many of the allegations made throughout the complaint, including that unqualified personnel administered patients' treatment, that patients were left unsupervised while doing therapeutic exercises, and that, despite corresponding records which list specific medical complaints purportedly made by patients, non-English-speaking patients were seen without translators. In addition to these "exemplar" claims, GEICO asserts that 169 additional insurance claims were submitted as part of Barron's fraudulent scheme.

MTD Order at 2–5 (citations omitted).

Although both parties address the Policy's exclusionary provisions and the applicability of the Supplemental Legal Defense Endorsement, the Barron Chiropractors do not clear the first hurdle that a claim covered by the terms of the Policy can be roughly sketched from GEICO's allegations. Perhaps recognizing that NCMIC's duty to defend is triggered by a claim or suit seeking damages against the insured for an "injury," and that injury means "bodily injury, sickness, disease or death sustained by any one person," the Barron Chiropractors attempt to recast the Underlying Action as a "mix of both negligence claims and fraudulent billing" by taking a passage from the MTD Order out of context. [ECF No. 13 at 3]. In finding a specific case cited by Barron to be inapposite, this Court stated that GEICO had plausibly alleged "more than mere negligence in support of its fraud-based claims." MTD Order at 23; see Darviris v. Petros, 812 N.E.2d 1188, 1192 (Mass. 2004) (violation of Chapter 93A "requires, at the very

8

least, more than a finding of mere negligence"). This Court also recognized that GEICO's allegations concerned "fraudulent billing practices, many of which allegedly involve[d] violations of Massachusetts chiropractic regulations," and therefore sufficiently pleaded unfair and deceptive practices under Chapter 93A. MTD Order at 22. The unremarkable fact that fraud goes beyond negligence does not imply that GEICO's allegations also support a negligence claim, or any other claim for that matter, for bodily injury, sickness, disease, or death.

The Barron Chiropractors also try to fit the Underlying Action within the Policy by arguing that "the claims pled by GEICO, on [their] face, allege injury to Barron's patients," because the "complaint is replete of references to 940 Code Mass. Regs. § 3.16—which states that the Chapter 93A claims against Barron are predicated on actual injury to Barron's patients." [ECF No. 13 at 8]. For example, they cite Paragraph Nos. 106 and 583 and the related exhibits to GEICO's complaint, where GEICO purportedly "lists each and every patient who suffered injury as a result of Barron's purportedly deficient and negligent care." [ECF No. 13 at 8 n.2]. Paragraph 106 of GEICO's complaint reads:

> [Barron's] violations of professional norms set forth in the Code of Massachusetts Regulations constitutes *per se* unfair or deceptive acts in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A. The conduct was deceptive and misleading in connection with the sale of services and comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare."

[ECF No. 1-4 at ¶ 106]. This paragraph does not allege that Barron's violations of professional norms or of state regulations in any way caused a bodily injury to a GEICO insured. Violations of state regulations that constitute *per se* unfair or deceptive practices under Chapter 93A do not, without more, establish injury under Chapter 93A. See Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 840 N.E.2d 526, 533 (Mass. 2006) (even if defendant commits a *per se* unfair or deceptive practice under Chapter 93A, in accordance with 940 Code Mass. Regs. § 3.16, "a

9

plaintiff seeking a remedy under [Chapter 93A] must demonstrate that even a *per se* deception caused a loss"); cf. Frullo v. Landenberger, 814 N.E.2d 1105, 1113 (Mass. App. Ct. 2004) ("[T]he unfair or deceptive act or practice must be shown to have caused the loss of money or property that [Massachusetts General Laws Chapter 93A, § 11] makes actionable."). Moreover, Paragraph 583 and the related exhibits do not describe any injuries to GEICO's insureds relating to the Barron Chiropractors, but instead catalogue the amounts owed to GEICO for paying out on false claims. Contrary to the Barron Chiropractors' arguments, GEICO's Chapter 93A claims are not predicated on proving injury to Barron's patients, as opposed to an economic injury to GEICO, and their warning to this Court not to "make inconsistent rulings against Barron" is misplaced as there is no contradiction in holding that GEICO's allegations plausibly stated a Chapter 93A claim based on fraudulent medical bills, but not a claim related to bodily injuries suffered by GEICO's insureds.

The Barron Chiropractors ostensibly draw support from a recent First Circuit decision, Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc., 820 F.3d 36 (1st Cir. 2016). That case involved an insurance broker, covered by a professional liability insurance policy, who was sued by a competitor for engaging in unfair business practices under California law. Id. at 39. The applicable insurance policy covered "only suits arising from [the broker's] errors or omissions in rendering or failing to render professional services as an insurance broker or insurance agent." Id. at 40 (internal quotation marks omitted). The First Circuit held that, although the underlying action was brought by a competitor and not a customer of the broker, the allegations that the broker failed to act with reasonable care in soliciting and placing insurance policies roughly stated a claim arising out of the broker's professional activity. Id. at 44.

Here, the Policy does not broadly cover all claims or suits arising out of the Barron

Chiropractors' rendering of professional services, but is limited to a claim or suit for an "injury," which is narrowly defined under the Policy. Because the Policy and the Underlying Action present substantially different sets of terms and allegations than those at issue in Utica, Utica cannot resolve the contractual interpretation questions in this case, even in light of the First Circuit's instruction to focus the analysis on the "nature of the act, not the identity of the parties." Id. at 44.

In sum, at no point in its 626-paragraph complaint does GEICO appear to seek recovery against the Barron Chiropractors for a person's bodily injury, sickness, disease, or death, and the Barron Chiropractors' complaint fails to show that the allegations in the Underlying Action are reasonably susceptible to such an interpretation. The Underlying Action targets alleged fraudulent billing practices that caused GEICO to pay or settle false or inflated medical insurance claims, not professional malpractice that caused patient injuries. Further, GEICO's assertions that the Barron Chiropractors violated the standard of care in treating patients suggest only that Barron failed to comply with the conditions precedent to seeking reimbursement for chiropractic services rendered, thereby giving rise to GEICO's economic losses. Cf. Medmarc Cas. Ins. Co. v. Avent Am., Inc., 612 F.3d 607, 616 (7th Cir. 2010) (no duty to defend triggered where "even if the underlying plaintiffs proved every factual allegation in the underlying complaints, the plaintiffs could not collect for bodily injury because the complaints do not allege any bodily injury occurred"); Mylan Labs. Inc. v. Am. Motorists Ins. Co., 700 S.E.2d 518, 530 (W. Va. 2010) (rejecting duty to defend coverage for "bodily injury" where underlying action involved economic injury and connection between the plausibly-stated economic injury and a bodily injury was too speculative to trigger coverage).

Further, with an "injury" being the crucial requirement for a claim to be covered under

this Policy, the Barron Chiropractors have not shown at this point that, even assuming that Barron's patients were in fact injured, the allegations conceivably allow GEICO to in any way recover for such an injury. See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003) (where plaintiff's amendment to the complaint, which removed a claim for negligence, "resulted in the assertion of claims that all concerned alleged premium overcharges and fraudulent acts of concealment by [defendant]," the remaining allegations were not "'reasonably susceptible' of a construction that would bring them within the purview" of a policy covering losses arising out of negligent acts, errors, and omissions). Because GEICO's allegations only appear to be reasonably susceptible to stating claims for economic losses related to the Barron Chiropractors' billing practices, NCMIC does not have a duty to defend the Barron Chiropractors in the Underlying Action.[3]

## IV. CONCLUSION

Given the early stage of the case, the Court will allow the Barron Chiropractors an opportunity to amend their complaint to clarify their theory as to how the Underlying Action roughly sketches a claim for an "injury" as defined by the Policy. Moreover, the Barron Chiropractors may further develop their allegations regarding their indemnity rights, as neither party adequately addressed the question of whether the Underlying Action triggers a right to indemnification. Accordingly, the motion to dismiss [ECF No. 5] is GRANTED and the

---

[3] Although the Court need not address the applicability of any exclusions, because the Barron Chiropractors have not shown that the GEICO complaint is reasonably susceptible to an interpretation within the scope of the Policy, the Underlying Action might come within the exclusion for any claims alleged to be caused by the insured's "actual gaining of personal profit, or advantage to which [the insured] [is] not legally entitled." [ECF No. 1-1 at 25]. See, e.g., Colony Ins. Co. v. Fladseth, No. C 12-1157 CW, 2013 WL 1365988, at *14 (N.D. Cal. Apr. 3, 2013) (exclusion of claims arising out of the "gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled" applied to underlying action where defendant gained an unlawful profit "by categorizing overhead expenses as costs, by charging clients rates higher than the statutory limit and by telling their clients that this was proper").

12

complaint is <u>DISMISSED</u> without prejudice. The Barron Chiropractors may file an amended complaint within 30 days of date of this Order.

    **SO ORDERED.**

May 4, 2018                                                            <u>/s/ Allison D. Burroughs</u>
                                                                                               ALLISON D. BURROUGHS
                                                                                               U.S. DISTRICT JUDGE